[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10092
Non-Argument Calendar
_____

D.C. Docket No. 9:18-cv-81181-RKA

EDWARD M. MOORE,

Plaintiff-Counter Defendant-Appellee,

versus

M/V SUNNY USA,
a 73 foot motor yacht USCG No. 1042503,
HIN No: ISNMUL06B994 her engines, tackle, boats, gears,
appurtenances etc., *in rem* a.k.a. Empire Discovery,

Defendant,

JOHN DONG,

Interested Party-Counter Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 17, 2021)

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

John Dong, an interested party proceeding *pro se*, appeals the district court's entry of summary judgment to Edward Moore in a proceeding involving the M/V Sunny USA a/k/a Empire Discovery ("the ship"). The district court initially granted Moore a maritime lien against the ship, which Dong owned at the time, and later allowed the ship to be sold at an interlocutory auction after Dong failed to post the required bond in time. Dong argues that the district court lacked subject matter jurisdiction over this case. He also contends that the district court erred in granting summary judgment to Moore because Moore failed to establish the elements of a maritime lien. Because we find that the district court had subject matter jurisdiction over this case and properly granted summary judgment to Moore, we affirm.

## I.  Facts and Procedural Background

In 2018, Edward Moore filed suit in the Southern District of Florida against the M/V Sunny USA, a 73-foot motor yacht. Moore sought to foreclose on a maritime lien for necessaries he provided the ship while it was docked at his private dock. He also alleged breach of maritime contract based on unpaid docking fees and other expenses and negligence based on the ship owner's failure to prepare and moor the ship properly, which damaged the dock during a hurricane.

The district court responded to the complaint by issuing an arrest warrant *in rem* for the ship,[1] under Supplemental Rule C for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules").  The warrant included a notice for anyone claiming an interest in the ship to file a verified statement of right or interest within 14 days, a deadline that would expire in early October 2018.

In November 2018, Dong, proceeding *pro se*, identified himself as the owner of the ship and moved to dismiss the complaint, alleging that it was a "fraud upon the Court" and part of an extortion scheme by Moore against him.  In his motion, Dong alleged that Moore had "grossly over charged" him for services provided to the ship and denied that Moore had provided some of the services that Moore had claimed he provided.  Dong did not file a statement of right or interest at that time.

Moore moved for an interlocutory sale of the ship under Supplemental Rule E(9)(a),[2] asserting that: (1) the ship was deteriorating while docked pending the resolution of the action; (2) the cost of keeping the ship docked was

---

[1] An action *in rem* is "[a]n action to determine the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property; a real action." *Action*, Black's Law Dictionary (11th ed. 2019).

[2] The Supplemental Rules permit an interlocutory sale—a sale before final judgment—where "the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action" or where "the expense of keeping the property is excessive or disproportionate."  Fed. R. Civ. P. Supp. Rule E.

disproportionate to any remaining equity in it; and (3) no one had come forward asserting a claim to the ship since it was arrested.

The district court denied Dong's motion to dismiss because he had not filed a verified statement of right or interest in the ship and thus lacked standing to challenge the *in rem* action.  The district court then granted Moore's motion for interlocutory sale, finding that Moore had demonstrated an entitlement to an interlocutory sale under Supplemental Rule E(9)(a), and ordered that the ship be sold at an auction on or before March 22, 2019.

On March 6, 2019, the district court entered a default judgment against Dong.  The next day, Dong filed a supplemental statement of interest in the ship along with several motions.  First, he moved for reconsideration of the district court's order denying his motion to dismiss, arguing that he had already identified himself as the ship's owner and that the district court thus erred in denying his motion for lack of standing.  Second, he moved to stay the case because of criminal proceedings pending against him.  Third, he moved to stay the interlocutory sale pending his appeal of the district court's denial of his motion to dismiss.  Fourth, he moved the district court to set a bond for the ship in an amount no more than the amount of the necessaries that Moore had allegedly provided.[3]

---

[3] Dong later filed duplicative motions to the same effect as these four motions.

In an omnibus order, the district court addressed Dong's motions and granted the motion for reconsideration in part.[4] The district court found that it would be manifestly unjust to deny Dong standing to contest the sale of the ship merely because he failed to comply with Supplemental Rule C, and construed Dong's motion to dismiss as a verified and timely filed statement of interest in the ship. Accordingly, it set aside its earlier default judgment and reinstated Dong's motion to dismiss.

Substantively, however, the district court denied Dong's motion to dismiss, finding that Dong had merely contested the allegations in the complaint and made unsupported claims of conspiracy and fraud. It also denied Dong's motions to stay the case and to stay the interlocutory sale. Nonetheless, the district court granted Dong's motion to set bond and release the ship and instructed him to deposit a $60,000.00 security bond with the district court by March 22, 2019.

Dong failed to post a bond by the required date and the ship was sold at auction on March 22, 2019.[5] The sale subsequently was confirmed by the district court. According to the process receipt, the buyer was Matthew Valcourt, Moore's

---

[4] The district court also addressed several motions filed by Moore that are not relevant to this appeal in its omnibus order.

[5] We note that nothing in the district court's order granting Moore's motion for interlocutory sale, or in the Supplemental Rules, prevented Dong from participating in the auction.

5

attorney, who made the successful bid of $1,000 for the ship. The bill of sale, however, listed "Inchan Drydocking Services" as the buyer.[6]

On April 18, 2019, Dong attempted to post a $60,000 bond for the ship. Dong also moved the district court to implement the "mailbox rule"—to toll case deadlines to allow sufficient time for him to receive and submit motions—based on his incarceration at the time. In a report and recommendation ("R&R"), the magistrate judge recommended denying Dong's motion to implement the mailbox rule as moot. He construed the motion as referring to the "prison mailbox rule," under which a *pro se* prisoner's filing is deemed filed on the date he delivers it to prison authorities for mailing. The magistrate judge determined the motion was moot because Dong did not sign the notice of payment of bond until 11 days after the district court's deadline to post the bond.

Dong objected to the R&R, asserting that the "mailbox rule" deprived the district court of jurisdiction and that the interlocutory sale order, along with the district court's other orders, was void as a matter of law. In his objection, Dong reiterated that the sale of the ship was fraudulent and deprived him of due process.

---

[6] The district court subsequently ordered Moore to clarify in writing on whose behalf the ship was purchased, as well as any interest Valcourt had in the ship or Inshan Drydocking Services. In a subsequent filing, Moore explained that although Valcourt bid on the ship on behalf of Inshan Drydocking Services as its registered agent, Valcourt had no personal interest in the company or the ship at the time of sale or thereafter.

6

Lastly, he argued that the district court's finding that he had standing to contest the sale invalidated the interlocutory sale order.

Moore, in turn, moved for summary judgment, arguing that there was no genuine issue of material fact in the case because Dong had breached the dockage contract and the arrest and sale of the ship had been proper. Moore requested $600—the net proceeds from the sale—for his expenses in keeping the ship docked. In support of his motion, Moore attached a copy of the dockage contract with Dong along with a sworn declaration.

The dockage contract showed that in 2013, Moore and Dong agreed that Dong would lease 73 feet of dockage space on Moore's property and pay a monthly base rent of $900 until either party decided to terminate the lease upon 30 days' prior written notice to the other party. In the declaration, Moore stated that he was owed $61,174.40 in total as damages as of May 26, 2019.

Dong responded by contesting the existence of the lien, arguing that Moore engaged in a scheme to defraud him and charged monthly rent in excess of the agreed-upon amount. According to Dong, Moore perpetrated the following fraudulent scheme:

After years of docking Dong's ship at his property, Moore attempted to double the rent. When Dong refused to pay the increased rent, Moore informed Dong that he would terminate the lease in one month. Dong then made

7

preparations to move the ship to a new location, including hiring a licensed marine mechanic to inspect the ship's engines and paying for two months' rent for a new dock in the area. To prevent Dong from leaving, Moore sabotaged the ship's engines, flooded the engine room, and called in the Coast Guard to report falsely that the ship was abandoned and was discharging diesel into the water. Moore then continued to block Dong from repairing or relocating the ship to a new dock, repeatedly accusing the mechanics and captains Dong hired to do so of trespassing, preventing them from working on the ship. After preventing Dong from repairing or relocating the ship, Moore filed a false claim against the ship and failed to give Dong proper notice of the action. The result of the alleged scheme was that Valcourt was able to mislead the Court into auctioning off the ship, and then was able to purchase it for himself at a discounted price.

In support of his allegations, Dong filed an appendix that contained: (1) a confirmation of a "boat partnership agreement," (2) e-mail exchanges between Dong and Moore related to the parties' dispute, (3) an invoice showing that Dong had paid for a different dock in 2018, and (4) a picture showing the condition of the ship's engines.

The district court adopted the R&R, overruled Dong's objections, and granted summary judgment to Moore. It rejected Dong's contention that the interlocutory sale order was void and instead found that Dong had failed to post the

8

required $60,000 bond on time.  The district court then found that the ship had already been sold at auction and that Moore had established an entitlement to both a maritime lien and the $600 in sale proceeds.  Specifically, the district court found that Moore had shown the absence of an issue of material fact—and that Dong had failed to rebut Moore's showing—as to whether Moore: (1) provided necessaries (2) to a vessel (3) on the order of its owner or agent.  Turning to Dong's allegations of fraud and extortion, the district court found nothing in the record to present a genuine issue of material fact in support of those claims.  Thus, it concluded that Moore was entitled to summary judgment.  Following entry of final judgment in December 2019, Dong timely appealed.

## II.  Discussion

On appeal, Dong argues that the district court lacked subject matter jurisdiction over this case and that the district court erred in granting summary judgment to Moore because Moore failed to establish the elements of a maritime lien.[7]

### A.    Subject Matter Jurisdiction

--------

[7] Dong also argues that: (1) there was a violation of his due process rights because he was not given notice of the arrest of the ship and because the district court originally ruled that he lacked standing to participate in the *in rem* action, and (2) that the district court erred by denying his motion to dismiss the case as a sanction for Moore's alleged perpetration of a fraud on the district court.  We reject these arguments.  Dong had an extensive opportunity to participate in this litigation—the district court set aside its default judgment and Dong subsequently filed various motions and responses.  Further, Dong's allegations of fraud are not supported by evidence in the record.

The district court exercised subject matter jurisdiction over this case under 28 U.S.C. § 1333.  That section provides federal courts with original jurisdiction over civil cases of admiralty or maritime jurisdiction.[8]  We review a district court's determination that it has subject matter jurisdiction *de novo*.  *Colbert v. United States*, 785 F.3d 1384, 1388–89 (11th Cir. 2015).

Federal maritime jurisdiction extends to suits adjudicating maritime liens. *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) ("An *in rem* suit against a vessel is . . . distinctively an admiralty proceeding . . . within the exclusive province of the federal courts." (quotation omitted)).  The Federal Maritime Lien Act ("Lien Act"), 46 U.S.C. §§ 31341–31343, provides that any person who "provid[es] necessaries to a vessel on the order of the owner or a person authorized by the owner" has a maritime lien and may bring a civil suit *in rem* to enforce it.  46 U.S.C. § 31342.[9]  Courts have construed the term "necessaries" liberally to include everything "reasonably needed in the ship's business," asking "whether the goods or services in question were necessary to the continued operation of the vessel."  *Bradford Marine, Inc. v. M/V Sea Falcon*, 64

---

[8] *See* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction . . . [over] [a]ny civil case of admiralty or maritime jurisdiction . . . .").

[9] We have also held that a person seeking a maritime lien under 46 U.S.C. § 31342 must provide necessaries to the vessel at a reasonable price for a lien to attach.  *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005).  Dong did not challenge this requirement below as to the extra month of rent he agreed to pay and he does not do so on appeal.

F.3d 585, 589 (11th Cir. 1995) (quotations omitted).  We have previously held that dockage is "clearly" a maritime service.  *Inbesa Am., Inc. v. M/V Anglia*, 134 F.3d 1035, 1037 (11th Cir. 1998).

A "vessel" is a structure which "a reasonable observer, looking to [its] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water."  *Lozman v. City of Riviera Beach*, 568 U.S. 115, 121 (2013).  A contractual agreement for services constituting "necessaries" is generally sufficient to show they were performed "on the order of" the vessel's owner.  *See Barcliff, LLC v. M/V Deep Blue*, 876 F.3d 1063, 1070–71 (11th Cir. 2017).  We obtain *in rem* jurisdiction over a vessel upon attachment of a maritime lien.  *Crimson Yachts*, 603 F.3d at 868.

Here, the district court had subject matter jurisdiction and properly asserted *in rem* jurisdiction.  The provision of necessaries to the ship in a manner satisfying the Lien Act provided the district court with admiralty jurisdiction.  *See Crimson Yachts*, 603 F.3d at 868.  The district court properly asserted *in rem* jurisdiction because Moore set out the elements of a maritime lien.  Moore (1) provided necessaries by keeping the ship docked, (2) the ship was a "vessel" under the Lien Act, and (3) the docking lease agreement showed that Moore provided such necessaries on the order of Dong, the ship's owner.  Thus, *in rem* jurisdiction

11

attached through the maritime lien, and the district court had subject matter

jurisdiction to hear this case under 28 U.S.C. § 1333.

B.    Summary Judgment

Dong argues that the district court's entry of summary judgment was

improper because disputed issues of material fact still existed.[10]  We review a

district court's grant of summary judgment *de novo*.  *Weeks v. Harden Mfg. Corp.*,

291 F.3d 1307, 1311 (11th Cir. 2002).  Summary judgment is appropriate when the

evidence, viewed in the light most favorable to the nonmoving party, presents no

genuine dispute as to any material fact and compels judgment as a matter of law.

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see*

Fed. R. Civ. P. 56(a).  The moving party carries the initial burden of showing the

---

[10]  Dong also alleges that: (1) the district court violated his due process rights by initially denying him standing, (2) Moore failed to give him adequate notice of the arrest of the ship, (3) the judgment should be set aside for fraud upon the court under Federal Rule of Civil Procedure 60(b), (4) the district court abused its judicial power by depriving him of his property interest in the ship, and (5) the district court abused its judicial power by issuing a "direct judgment."

Even if the district court violated Dong's due process rights by initially denying him standing or Moore failed to give him adequate notice of the arrest of the ship, Dong still had an opportunity to contest the sale of the ship, post the required bond, and bid at the auction.  Thus, we reject Dong's arguments that the district court violated his due process rights or that Moore failed to give him adequate notice.  *See* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error . . . is ground . . . for vacating, modifying, or otherwise disturbing a judgment or order.  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").  We also reject Dong's argument that the judgment should be set aside for fraud on the court because "[f]raud on the court is . . . limited to the more egregious forms of subversion of the legal process," and Moore's alleged conduct here does not reach that high bar.  *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985).  Finally, because we conclude that Dong did not show a genuine issue of material fact as to Moore's entitlement of a maritime lien, we reject Dong's arguments that the district court abused its judicial power.

absence of a genuine issue of material fact.  *BBX Capital v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1314 (11th Cir. 2020).  Once the moving party has made that showing, "the burden shifts to the non-moving party to come forward with specific facts" showing a genuine issue of material fact.  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quotation marks and citation omitted).

Here, Dong presented no evidence establishing that a genuine issue of material fact existed as to the propriety of the maritime lien.  As the district court noted, based on Moore's dockage lease and his sworn declaration, the following facts were undisputed: (1) there was a docking agreement between Moore and Dong, that (2) involved the ship, owned by Dong at the time.  Dong did not dispute those facts below and he does not do so on appeal.  Those facts established the basis for a maritime lien here.  The evidence that Dong identifies—the confirmation of a "boat partnership agreement," the e-mail exchanges between Dong and Moore related to the parties' dispute, the invoice showing that Dong had paid for a different dock in 2018, and the picture showing the condition of the ship's engines—does not invalidate the lease agreement or otherwise affect the fact that Moore provided at least some docking services to the ship under the parties' agreement.  Although Dong disputes the amount of the lien, he failed to introduce evidence to create a genuine dispute of fact as to whether he owed Moore at least $600 under the parties' lease agreement.  Accordingly, Dong failed to demonstrate

13

the existence of a genuine issue of material fact, and the district court properly

granted summary judgment to Moore.

## III.  Conclusion

Because the district court had subject matter jurisdiction to hear this case

and because the district court properly granted summary judgment to Moore, we

affirm.

**AFFIRMED.**